UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JAMES B. TILSON | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | NO. 3:04-CV-268 |
| | ) | (3:03-CR-08) |
| UNITED STATES OF AMERICA | ) | |

## MEMORANDUM OPINION

Pursuant to his guilty plea, petitioner James B. Tilson was convicted of being a felon in possession of a firearm and was sentenced as an armed career criminal to a mandatory minimum sentence of fifteen (15) years imprisonment (i.e., 180 months). 18 U.S.C. §§ 922(g)(1) and 924(e). Proceeding *pro se*, Tilson now brings this motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. [Doc. 1]. Several motions to amend, also brought by the petitioner, are currently pending and will be addressed first.

### I. MOTIONS TO AMEND

The proposed amendments to Tilson's § 2255 motion are subject to a one-year statute of limitations. *See* 28 U.S.C. § 2255; *Mayle v. Felix*, 545 U.S. 644 (2005). The limitations statute in the petitioner's case began to run when his conviction became final at the conclusion of his direct review. The petitioner's judgment of conviction was entered on June 27, 2003 and would have become final ten days later, on July 7, 2003, upon the expiration of the ten-day period for filing a notice of appeal. *Sanchez-Castellano v. United States*, 358 F.3d 424, 427-28 (6th Cir.2004). Thus, the one-year time limit for filing *or amending* his §

2255 motion would expire, at the latest, on July 7, 2004. The petitioner's first motion to amend [Doc. 7], filed on March 14, 2005,[1] was filed some eight months after the deadline. Thus, this motion to amend is untimely; the four others which followed it are even more untimely; and all are barred by § 2255's statute of limitations, unless the amendments "relate back" under Rule 15(c) of the Federal Rules of Civil Procedure to the petitioner's previous claims. *Mayle*, 545 U.S. at 656-57.

In the first of these motions [Doc. 7], the petitioner seeks to modify his petition to include two additional claims of ineffective assistance, to wit, that his attorney failed to advise him that he could have received a 120-month sentence, instead of the 180 months actually imposed, and also failed to challenge the use of his prior convictions to increase his sentence based on the lack of notice of the enhancement. These allegations were not included in the original pleading. Because these claims are distinct claims, different in type from the original ineffectiveness claim, they do not relate back to his initial pleading and because they do not relate back, Tilson's motion to add them is untimely.

Even if timeliness were not an issue, the motion would still be denied because the amendments would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (A proposed amendment may be denied for, among other reasons, "futility of amendment."). The allegation involving a 120-month sentence, apparently based on a guidelines sentencing

---

[1] In calculating the filing date, the Court has applied the "mailbox rule" and has deemed the § 2255 motion to have been filed on March 14, 2005—the date that Tilson signed it. *In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997) (*citing Houston v. Lack,* 487 U.S. 266, 270-71 (1988)).

2

calculation, ignores the fact that Tilson was not sentenced under the guidelines, but instead under the statute. And the contention that his counsel was ineffective for failing to attack his sentence based on a lack of notice of the armed career criminal enhancement is groundless because the ACCA does not require the government to notify a defendant of its intent to seek an enhanced sentence, *United States v. Mauldin*, 109 F.3d 1159, 1163 (6th Cir. 1997), and because an attorney is not required to raise claims that have no legal basis and are doomed to fail. *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir.1986). And, counsel cannot be ineffective when he does not raise such claims. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001).

Moreover, even if notice were required, Tilson had it. He was indicted under § 924(e), the ACCA statute; the plea agreement he signed contained a stipulation that he had nine prior felony convictions, including the three offenses used to sentence him as an armed career criminal; and, finally, the prior convictions warranting an enhanced sentence under the ACCA were listed in the presentence report, to which he did not object, even though he had an opportunity to do so. [Doc. 13 in the criminal file]

In the second motion to amend [Doc. 9], the claim the petitioner proposes to add is that his attorney was ineffective for failing to move to suppress a video tape of his arrest which, according to the petitioner, would have shown that he was not given the warnings required by *Miranda v. Arizona*, 384 U.S. 486 (1966), and would have resulted in a different outcome. Though the Court cannot conceive of any reason to seek to suppress evidence which, presumably, would have been favorable to the defense (since the tape purportedly

depicted a *Miranda* violation, which might have resulted in the suppression of evidence against the petitioner), the amendment he offers is brand new and, therefore, does not relate back to the filing of the initial § 2255 motion. Because the proposed amendment is time-barred, the motion itself is untimely.

In the third motion to amend [Doc. 11], Tilson argues that his sentence was illegally enhanced, in violation of the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and the line of cases which followed it. *See, e.g., United States v. Booker*, 543 U.S. 220 (2005). The petition does not contain an independent *Booker*-related claim and, thus, the claim could not relate back to an earlier-filed claim. Therefore, as was the case with the preceding motions, this motion comes too late.

But, even if not time-barred, the motion would be denied based on the futility of amendment. The futility of raising a *Booker* claim in a § 2255 motion is well settled because the Sixth Circuit has held that the *Booker* rule is not retroactive and does not apply to collateral proceedings. *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005).

The fourth and fifth motions to amend [Docs. 19, 20] do relate back to the original ineffective-assistance claim, since the offered amendments elaborate on the claim in the original § 2255 petition. Hence, those motions are timely and the Court will considered the proffered amendments in rendering its decision in this matter.

## II. THE § 2255 MOTION

The United States has responded to the motion to vacate, contending that, in the plea agreement, the petitioner waived his right to file a motion to vacate with respect to all claims, save claims of ineffective assistance of counsel and prosecutorial misconduct, and that, even as to these claims, relief is not justified. [Doc. 5].

**A**. **Standard Of Review**

This Court must vacate and set aside a petitioner's conviction if it finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, a petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 434, 428 (1962)).

Moreover, where an alleged error could have been asserted on direct appeal but was not, it is considered procedurally defaulted and a petitioner must demonstrate "cause" for his failure to previously raise the issue, and also must demonstrate "actual prejudice" resulting from his failure to present the claim on direct appeal. *United States v. Frady,* 456 U.S. 152, 167-68 (1982). Courts are entitled to presume, once a direct appeal has been decided, a defendant "stands fairly and finally convicted," and thus, absent a showing of "cause and actual prejudice," raising a claim pursuant to § 2255 will not substitute for raising the claim on direct appeal. *Id*.

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case.

**B**. **Factual Background**

Just before midnight on August 18, 2002, the Knoxville Police Department received a call from persons who stated that they had been driven from the Knoxville Billiard Club to a liquor store by a man in a gray, compact vehicle; that they had given the driver money to purchase liquor for them; that the man had returned without the liquor and refused to return their money; that he drove them back to the Billiard Club; and that the man was waving a gun, though he did not assault them with it. Some two hours later, an officer responding to a report that the driver had returned to the Billiard Club, found the suspect, later determined to be Tilson, sitting in a car which fit that description. On the floorboard below the driver's seat lay a .22-caliber revolver. A subsequent check of Tilson's criminal history revealed that he had numerous felony convictions.

On January 22, 2002, Tilson was charged in a one-count indictment with possession of a firearm after being convicted of a felony—a violation of 28 U.S.C. § 922(g)(1). Pursuant to a plea agreement, Mr. Tilson pled guilty and was convicted of that offense.

Subsequently, he was sentenced to a 180-month term of imprisonment, to be served concurrently with the state prison sentence he was then serving and with the 24-month sentence imposed as a result of revocation proceedings in Criminal Action 3:94-cr-07, followed by five years of supervised release. Tilson did not file an appeal, but instead brought this instant § 2255 motion to vacate, presenting two grounds for relief.

**C. Discussion**

    1. <u>Waiver</u>.

The United States draws the Court's attention to the provision in the plea agreement, signed by the petitioner, which states that he "agrees not to file any motions or pleadings pursuant to 28 U.S.C. § 2255 ...[and] waives his right to collaterally attack his guilty plea in the instant case ... [but] retains his right to raise claims of ineffective assistance of counsel or prosecutorial misconduct ... [and] actual[] innocen[ce]." Based on this provision, the respondent maintains that all claims except ineffective assistance of counsel and prosecutorial misconduct are waived. Citing to *Bousley v. United States*, 523 U.S. 614, 621 (1998), the respondent further argues that the petitioner cannot avoid the waiver by disguising procedurally defaulted claims which were not raised on appeal as instances of ineffective assistance of counsel.

The Court finds these arguments inapposite to Tilson's case. First of all, because he is raising only the genre of claims permitted in his plea agreement [i.e., ineffective assistance and, ostensibly, prosecutorial misconduct] and is not attacking the validity of his guilty plea,

the "waiver" provision in the plea agreement does not affect his right to bring this instant motion. Secondly, the Supreme Court has rejected the premise that, when a petitioner's claim was procedurally defaulted by his trial counsel's failure to raise it, his Sixth Amendment claim based on that failure was likewise defaulted. *Kimmelman v. Morrison* 477 U.S. 365 (1986). "While defense counsel's failure to make a timely suppression motion is the primary manifestation of incompetence and source of prejudice advanced ..., the two claims are nonetheless distinct, both in nature and in the requisite elements of proof." *Id.*, at 374. The respondent's similarly-premised argument must also be rejected based on *Kimmelman*. Tilson may raise a claim of ineffective assistance of counsel, regardless of whether the acts or omissions offered as illustrations of attorney error were presented as independent claims during the direct appeal.

    2. <u>Enhancement by Prior Convictions - Ineffective assistance of counsel</u>.

During his guilty plea and sentencing proceedings, the petitioner was represented by Elizabeth B. Ford, the Federal Public Defender. The petitioner alleges that Ms. Ford gave him ineffective assistance by failing to contest the use of his prior state convictions to sentence him as an armed career criminal.

A petitioner who alleges a claim of ineffective assistance of counsel must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Where a petitioner challenges a guilty plea, he must establish: 1) that the advice he received from counsel in

8

entering the plea was not within the range of competence demanded of attorneys in criminal cases and 2) that he was actually prejudiced in his defense because there is a reasonable probability that, without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985).

In judging an attorney's conduct, a court should view counsel's performance with great deference, engaging in a strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.*, at 691-92. .

The punishment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) is imprisonment for "not more than 10 years." 18 U.S.C. § 924(a)(2). Under the Armed Career Criminal Act (ACCA), however, there is a minimum mandatory term of imprisonment of fifteen (15) years for a person convicted of violating 18 U.S.C. § 922(g) who has three prior convictions for a violent felony or serious drug offense. *Id*. § 924(e)(1). Because the petitioner had been convicted of two violent felonies and a serious drug offense, he was sentenced as an armed career criminal.

In his reply to the United States' response, Tilson suggests that his Tennessee felony convictions for robbery, aggravated assault, and the sale of cocaine [Doc. 5, attach. 1-3] cannot be used to increase his sentence. He maintains that the aggravated assault conviction,

while it sounds as though it would involve violence, was not based on one shred of evidence that, in fact, it was a violent offense; that he only pled guilty so that the prosecution would drop the charges against his co-defendant, who is his mother as well; and that, at any rate, using "violent charges" such as these to enhance his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004).[2] Also, according to the petitioner, his conviction for the sale of less than .5 grams of cocaine, a Class C felony under Tennessee law, does not qualify him for enhancement either. This is so, he argues, because the presumptive sentence for Range I offenders convicted of Class C felonies is the minimum sentence in the range, assuming no aggravating or mitigating factors, and because he received only a six-year sentence—not the six- to ten- year sentence adverted to in 28 U.S.C. § 802.[3]

Several of Tilson's explicit or implied arguments are easily disposed of. The Court is not permitted to look through to the petitioner's actual criminal conduct underlying his prior convictions to determine whether they qualify as predicate offenses for purposes of ACCA sentencing. *United States v. Campbell*, 256 F.3d 381, 395-96 (6th Cir. 2001). To make such a determination, with a narrow exception not relevant here, only the fact of the

---

[2] In *Blakely*, the Supreme Court held that a state court violated a defendant's Sixth Amendment right to a trial by jury by imposing a 90-month sentence, where the facts admitted in his guilty plea established a statutory maximum of 53 months. This judicial determination of facts not found by the jury (i.e., that the defendant had acted with "deliberate cruelty") to increase the sentence violated the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[3] This allegation is confusing. Section 802 does not specify the penalty for the offense, but instead, contains definitions used in the federal drug statutes. Also, Tilson was not classified as a Range I offender but, instead, a Range II offender.

conviction and the statutory definition of the offense may be considered. *Taylor v. United States*, 495 U.S. 575, 602 (1990). Therefore, Tilson's suggestion that his aggravated assault sounds violent, but really was not a violent felony is rejected because it would require the Court to examine his criminal conduct. Likewise, his request to have the Court consider his motive in pleading guilty must be declined because an inquiry into the motivation which prompted him to plead guilty is far removed from the approach dictated by *Taylor*.

Finally, to the extent that Tilson, by citing to *Blakely*, is making an oblique *Booker* argument (i.e., that, unless a prior conviction is found by a jury beyond a reasonable doubt, it cannot be used to enhance a sentence under the ACCA), such an argument is doomed. The rule that a defendant has a right to a jury finding of sentence-enhancing facts does not apply to prior convictions. *See United States v. Booker*, 543 U.S. 220, 244 (2005); *see also United States v. Lancaster*, __ F.3d __, __, 2007 WL 2457448, \*\*8 (6th Cir. Aug. 31, 2007) (determining that the fact and nature of a prior offense is not an element that must be proven beyond a reasonable doubt or admitted by a defendant to impose a sentence under the ACCA).

The Court now turns to the petitioner's assertion that, by failing to question the use of his prior convictions to sentence him as an armed career criminal, his attorney gave him ineffective assistance. To defeat this claim, the respondent has submitted copies of the three state criminal judgments entered against the petitioner to show that those prior convictions qualified as predicate offenses for his ACCA-enhanced sentence. (Doc. 5, Attach 1-3).

As relevant here, the ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ... for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A). The statute defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year ...that has as an element the use, attempted use, or threatened use of physical force against the person of another; or is a burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another..." 18 U.S.C. § 924(e)(2)(B).

In 1995, the petitioner was convicted of selling a "Schedule II controlled substance," specifically, cocaine in an amount less than .5 grams, in violation of Tenn. Code Ann. § 39-17-417(a)(3), (c)(2)(A). That particular offense is a Class C felony, for which a term of imprisonment of up to ten years is authorized for a Range II offender like the petitioner. Tenn. Code. Ann. 40-35-112(b)(3). Therefore, Tilson's conviction for the sale of less than ½ grams of cocaine fits within the definition of a serious drug offense and serves as a qualifying offense for sentencing as an armed career criminal under § 924(e)(2)(A)(ii). *See James v. United States*, 217 F.Appx. 431, *440, 2007 Fed. App. 0114N (6th Cir. Feb. 12, 2007) (sale of schedule II controlled substances in violation of Tenn. Code Ann. § 39-17-417(a)(3) and (c)qualifies as a serious drug offense under the ACCA); *United States v. Roach,* 958 F.2d 679, 683 (6th Cir.1992) (same).

Furthermore, *United States v. Williams*, 326 F.3d 535 (4th Cir. 2003), a case cited by Tilson, is not to the contrary because the facts in *Williams* are distinguishable from the facts in his case. The New Jersey drug conviction at issue in *Williams* carried a maximum penalty of five years, but could be enhanced to ten years, under some circumstances (i.e., where a defendant had prior drug convictions) and where specific procedural safeguards were met. Because the record did not show that the procedural safeguards mandated by state law had been exercised and because, absent the safeguards, a 10-year sentence could not have been imposed, the Fourth Circuit held that the New Jersey conviction was not a predicate offense under the ACCA. Tennessee's statute is entirely different. For a Class C felony, as was the petitioner's offense of conviction, the statute provides for punishment up to ten years. Thus, the petitioner's cocaine conviction which prescribed "a maximum term of imprisonment of ten years or more" is a "serious drug offense" under the ACCA.

Equally unavailing is the petitioner's suggestion that *Lopez v. Gonzales*, 127 S. Ct. 625 (2006), supports his position. At issue in *Lopez* was whether an alien's state drug conviction classified as a felony under state law, but as a misdemeanor under the Controlled Substances Act, constituted an "aggravated felony" for purposes of federal immigration law.[4] Tilson argues that *Lopez* and other cases show that possession of less than ½ gram of cocaine does not qualify as a predicate offense for § 924(e) enhancement. Tilson avoids the obvious question as to how *Lopez* applies to his case since he was convicted for the *sale* of cocaine,

---

[4] Under the Illegal Immigration Reform and Immigrant Responsibility Act, the commission of an "aggravated felony" renders an alien removable. 8 U.S.C. § 1227(a)(2)(A)(iii).

not for mere *possession*, and since the Sixth Circuit's definition of "aggravated felony" for purposes of immigration law corresponds with the holding in *Lopez*. *Liao v. Rabbett*, 398 F.3d 389 (6th Cir. 2005). More important, Tilson, who is not an alien, has not shown how a ruling concerning immigration law applies to his sentencing as an armed career criminal.

Finally, despite Tilson's arguments to the contrary, his convictions for robbery and for aggravated assault, committed respectively in 1992 and 1990, constitute violent felonies within the terms of the ACCA. Robbery is a Class C felony and is defined as intentional theft of property by violence or putting the person in fear. Tenn. Code Ann. § 39-13-401 (1993). Aggravated assault is an intentional assault causing serious bodily injury or involving the use or display of a deadly weapon: it too is a Class C felony. Tenn. Code Ann. § 39-13-102(a)(1), (d)(1). *See also United States v. Wilder*, 161 Fed. Appx. 545, at *551-52, 2006 WL 20547 , at * 6 (6th Cir. Jan. 4, 2006) (Tennessee robbery convictions constituted violent felonies for purposes of sentencing under the ACCA); *Lancaster*, __ F.3d at __, 2007 WL 2457448, at **1 (affirming ACCA-enhanced sentence which was based on counting two Tennessee aggravated assault convictions as violent felonies).

Thus, in view of the above discussion, counsel did not render a deficient performance by failing to challenge the use of Tilson's three prior convictions to sentence him as an armed career criminal because they, in fact, qualified as predicate offenses under the statute. By the same token, since those convictions were correctly used as sentence-enhancing convictions, counsel's failure to raise this issue could not have caused any prejudice to the petitioner.

### 3. Downward Departure—Prosecutorial Misconduct and Ineffective Assistance.

In his § 2255 motion, Tilson states his claim in its entirety, as follows:

Prosecutor failed to file for downward departure. Plea aggrement (sic) for assistance to the government which they never filed for downward departure. [Doc. 1 at 5].

In his reply to the United States' response, the petitioner elaborates on his claim, alleging that, at the outset of his debriefing session, the agent conducting the interview stated that he was disinclined to help the petitioner because of his treatment of the arresting officers. The agent then went on to inquire about the names of persons involved in criminal activity, and every time the petitioner gave him a name, the agent would ask whether that person was black or white. The agent asked specifically whether there were any black men petitioner could "give up," and petitioner gave him the name of the only person of that race he knew. The agent also asked him about specific black men—none of whom petitioner knew—and whether that was all the petitioner knew. The interview terminated when the petitioner answered "yes."

Though acknowledging that a videotape of the incident showed that he was "very unruly" with those officers, the petitioner argues that this conduct should not have interfered with a downward departure. Not surprisingly, the United States disagrees as to its obligation to seek a sentence decrease and, citing to certain provisions in the plea agreement, insists that it retained full discretion in determining whether the petitioner's cooperation was substantial

15

so as to warrant a motion for a downward departure under § 5K1.1 of the United States Sentencing Guidelines.

First of all, the Court has reviewed the plea agreement and nothing contained in that document binds the United States to file a motion for a downward departure based on the petitioner's assistance. (Criminal Case File, Doc. 13, Plea Agreement). In fact, the agreement itself provides that " [i]f, in the opinion of the United States, the [petitioner] renders substantial assistance within the meaning of U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e) or Rule 35 of the Federal Rules of Criminal Procedure, the United States will file a motion" for a downward departure." (*Id.* at ¶ 10). The agreement continues: "The [petitioner] acknowledges that, under the law and under the terms of this plea agreement, the United States retains complete discretion in determining whether a departure motion will be filed." (*Id.* at ¶ 10). Another provision in the plea agreement reads: "The [petitioner] understands that the determination of whether a downward departure motion is warranted for the [petitioner's] substantial assistance to the Government will be made in the sole discretion of the United States Attorney." Thus, there is absolutely no basis for construing the plea agreement as requiring the United States to file a motion for a downward departure based on the petitioner's cooperation. Unless there is an actual agreement, a defendant is not entitled to a remedy on his bald assertion that he rendered substantial assistance to the prosecution. *Wade v. United States*, 504 U.S. 181, 186 (1992).

Secondly, a court has jurisdiction to review the failure to file motion for a downward departure *only* where: 1) the refusal to file is based on an unconstitutional reason such as race or religion or other arbitrary classification or 2) where it is not rationally-related to any legitimate Government goal. *Id.* at 185-86 (concerning motion under USSG § 5K1.1); *United States v. Orozco*, 160 F.3d 1309, 1312 (11th Cir. 1998) (applying *Wade*'s reasoning to Rule 35(b) motion), *cert. denied*, 528 U.S. 10892 (2000); *McMullin v. United States*, 103 F.3d 130 (Table) 1996 WL 671382, *2 (6th Cir. Nov. 19, 1996) (same), *cert. denied*, 520 U.S. 1144 (1997).

Even if the Court liberally construes this *pro se* prisoner's allegations that the debriefing agent only seemed interested in the disclosure of possible criminal activities of black persons to be an implied claim that race played a part in the Government's decision not to seek a downward departure, it would not help the petitioner. This is so because, while the inference to be drawn from these allegations is troubling, the petitioner does not indicate or even claim that the Government did not request a downward departure because of *his* race. Certainly, the Court is aware of no authority which would support such a proposition.

Given the terms in the plea agreement which conferred full discretion on the government as to whether to request a decrease in the petitioner's sentence based on his cooperation and the lack of any true support for the proposition that the decision not to move for a downward departure was motivated by the petitioner's race, the Court finds that his claim that his attorney was ineffective for failing to challenge that decision and pursue a

17

lower sentence was an entirely reasonable strategic choice, and in the Court's view, a wise one, and does not give rise to a claim of ineffective assistance of counsel. By the same token, the petitioner's allegation that the prosecutor engaged in misconduct by failing to make that motion is groundless.

## D. Conclusion

For the reasons indicated above, Tilson is not entitled to relief under § 2255 and his motion to vacate, set aside or correct his sentence will be **DENIED** and this action will be **DISMISSED**.

## E. Certificate Of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should the petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has individually assessed the petitioner's claims under the relevant standards and finds those claims do not deserve to proceed further because they have no viability in light of the governing law and jurists of reason would not conclude the

disposition of those claims was debatable or wrong. Because Tilson has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

An appropriate order will follow.

ENTER:

<u>    s/ Leon Jordan    </u>
United States District Judge